Huff *v.* Glenn.

HUFF *v.* GLENN.

*(Jackson.*　May 11, 1898.)

MORTGAGES AND DEEDS OF TRUST.　*Of separate estate of feme còvert void, when.*

A joint mortgage of the wife's separate estate, acknowledged by the husband and wife before an officer having no authority to take acknowledgments of deeds, is void.　While a married woman's deed or mortgage of her separate estate may, under the statutes, be valid in certain excepted cases without joinder of her husband, it cannot be sustained in any case without her privy examination, taken in due form before a duly authorized officer.

Code construed: §§ 4242–4246 (S.); §§ 3346–3350 (M. & V.); §§ 2486*a*–2486*c*.

Act construed: Acts 1869–70, Ch. 99.

Case cited and distinguished: Vick *v.* Gower, 92 Tenn., 391.

---

FROM GIBSON.

---

Appeal from Chancery Court of Gibson County. JOHN S. COOPER, Ch.

R. P. RAINES and T. J. HAYS for Huff.

WALKER & BIGGS for Glenn.

BEARD, J.　The bill in this case was filed to enforce a mortgage of rents to accrue on certain real estate of Mrs. Glenn, which she held as a sep-

arate estate.  This mortgage was made by the hus-
band and wife to secure a note of five hundred
dollars, executed by the husband of Mrs. Glenn
some months before the date of the mortgage.  The
Chancellor dismissed the bill upon several grounds,
among them being that the mortgage was not au-
thenticated so as to bind Mrs. Glenn.

The instrument in question was acknowledged by
Mr. and Mrs. Glenn, who seem, at the time, to
have been domiciled in Texas, before a Clerk of one
of the County Courts of that State.  His certificate
of acknowledgment is fatally defective so far as
Mrs. Glenn is concerned.  We understand this to be
conceded, if this instrument is to be treated as the
ordinary deed or mortgage of a husband and wife
conveying a wife's interest in real estate.  But it
is insisted that this is a mortgage of the wife's
separate estate, and that under Ch. 99 of the Acts
of 1869–70, carried into the (Shannon's) Code at
§§ 4242, 4243, 4244, 4246, it is good without any
privy examination of the wife.  This contention is
unsound.  The Act in question, so far as it is nec-
essary to the settlement of the present question, is
as follows:

"SECTION 1.  *Be it enacted by the General Assem-
bly of the State of Tennessee,* That married women
over the age of twenty-one years, owning the fee
or other legal or equitable interest or estate in real
estate, shall have the same powers of disposition,

17 P—8

by will, deed, or otherwise, as are possessed by *femes solé* or unmarried women.

"Sec. 2. *Be it further enacted*, That the powers of said married women to sell, convey, devise, charge, or mortgage their real estate shall not depend upon the concurrence of the husband, or his consent thereto, provided her privy examination to any deed, mortgage, or other conveyance shall take place before a Chancellor or Circuit Judge of this State, or Clerk of the County Court.

"Sec. 3. *Be it further enacted*, That *femes covert* or married women owning a separate estate settled upon them and for their separate use, shall have and possess the same power of disposition, by deed, will, or otherwise, as are given under the first and second sections of this Act, provided the power of disposition is not expressly withheld in the deed or will under which they hold the property. . . .

"Sec. 6. *Be it further enacted*, That the provisions of this Act, except the provisions of the third section of this Act, shall apply to and embrace only such *femes covert*, or married women, as have abandoned their husbands, or who may refuse to live with or cohabit with their husbands, or whose husbands may be *non compos mentis*, insane, or of unsound mind; and also to such married women, or *femes covert*, whose husbands may fail or refuse to cohabit with or have abandoned such married women or *femes covert*," etc.

There is no pretense in this record that Mrs.

Glenn, at the time of the execution of this mortgage, belonged to either of those classes of married women named in the sixth section of the Act—that she had either abandoned or been abandoned by her husband, or that she had refused to cohabit with him, or he with her, or that he was in any condition of mental unsoundness, as described therein.

The result is, that complainant cannot, to support his conveyance, invoke the provisions of sections one and two, but must rely alone upon the terms of section three of the Act. This section gives to a married woman owning a separate estate, where the power of disposition is not expressly withheld in the instrument creating it, "the same power of disposition that is given by the first and second sections of this Act." Upon recurring to these sections, it will be seen that the powers of disposition of the *femes covert* therein provided for are not dependent upon the concurrence or consent of the husband, provided a privy examination is had before a Chancellor or Circuit Judge of the State or a Clerk of the County Court.

In other words, under these sections, if a married woman who falls within any of the classes designated in section six of the Act, undertake to make a conveyance, then, to effectuate it, her acknowledgment must be taken in the form and before the officers designated. And this is equally true with regard to married women whose cases are covered by the third section; to make their conveyance, under the terms

of this Act, operative, they must be privily exam-
ined by some one of the public officers named in
the second section.

In the present case no effort was made to con-
form to the provisions of this statute, but husband
and wife joined in the conveyance and the acknowl-
edgment, and this was taken by an officer of another
State. But it is insisted that this acknowledgment
is good, on the authority of *Vick* v. *Gower*, 92
Tenn., 391. An examination of that case shows
that the instrument there in question was a deed
made by a married woman, conveying her separate
real estate to her husband. Subsequently she ob-
tained a divorce from this husband, and, having
married again, she filed a bill in the Chancery
Court to set aside that deed. She alleged three
grounds for relief: (1) That there was no considera-
tion for the conveyance; (2) that it was obtained
by moral coercion; and (3) that she had no power
to make the deed to her husband, even if it con-
veyed a separate estate.

In the opinion, this Court, in a few words, dis-
poses of the first two grounds of objection, and, at
length, of the third and remaining one. In meeting
this objection, which was rested on the common law
disability of the wife, the Court referred to the Act
in question as, by its terms, empowering a married
woman to convey her separate estate, where the
power of disposition was not expressly withheld from
her as an unmarried woman, and held that the con-

Huff *v.* Glenn.

veyance in question was within the provisions of the Act. It is thus seen that the only question in that case was as to the power of the married woman to make the conveyance in controversy, and not, as in the present case, as to the legal and effectual mode of exercising such power. In fact, the opinion does not indicate what officer took the acknowledgment of the *feme covert* to her deed, and it must, therefore, be assumed, and is no doubt true, that it was some one of those authorized by the Act. It is apparent that that case gives no support to the contention of complainant in this cause.

The decree of the Chancellor is affirmed as to Mrs. Glenn and the mortgage in question, but it is modified so as to give complainant a personal decree against J. G. Glenn for balance due on the note.