LARKIN *et al. v.* LIGHTBURNE *et al.*

(*Jackson.*   April Term, 1915.)·

**CURTESY.   Wife's separate estate.   Devise.**

In the Married Woman's Act (Acts 1869-70, ch. 99), section 3 of which provided that married women owning a separate estate should have the power to dispose thereof by deed or will the same as single women, and section 6 of which provided that the act, except section 3, should embrace only such married women as were living apart from their husbands or whose husbands were insane, provided all married women owning any land of any sort or description should have full power to dispose thereof by will as fully as if they were single, but such testamentary disposition should not be construed to defeat any husband's tenancy by curtesy therein, the exception of separate estates from the first part of section 6 does not apply to the latter part of the section, concerning wills, and the husband takes a life estate by curtesy in the separate estate of his wife, the settlement of which did not exclude his curtesy and which was devised to her by others.

Acts cited and construed:   Acts 1851-52, ch. 108, sec. 4; Acts 1869-70, ch. 99.

Cases cited and approved:   Johnson v. Sharp, 44 Tenn., 45; Molloy v. Clapp, 70 Tenn., 586; Lightfoot v. Bass, 76 Tenn., 350; Vick v. Gower, 92 Tenn., 394; Hughey v. Warner, 124 Tenn., 725; Williford v. Phelan, 120 Tenn., 589.

Case cited and distinguished:   Perry v. Gill, 21 Tenn., 218.

Code cited and construed:   Sec. 3901 (S.).

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.
—F. H. HEISKELL, Chancellor.

FITZHUGH & BIGGS, for appellant.

J. W. CANADA, for appellees.

MR. JUSTICE GREEN delivered the opinion of the
Court.

This is a suit to settle the estate of Catherine Larkin
Lightburne, deceased. Mrs. Lightburne owned certain
real estate in Shelby county vested "to her sole and
separate use, free from the debts, liabilities, and con-
tracts of her present or any future husband."

In 1893 she was married to J. S. Lightburne, and
several children were born to this union and still sur-
vive.

By her last will and testament she undertook to de-
vise the aforesaid real estate, held as her separate es-
tate, to her children. Her husband, J. S. Lightburne,
has filed a cross-bill in this cause seeking to set up a
tenancy by the curtesy in the land referred to devised
to the children.

The chancellor dismissed the husband's bill, and his
decree was affirmed by the court of civil appeals.

The only question before us is whether a wife may
dispose of lands held as her separate estate by will so as
to cut off her husband's tenancy by the curtesy.

At an early date this court said, considering a *feme
covert's* power to make a will:

"A wife can make a will of property which is hers,
not yet reduced into the husband's possession, but this

with the assent of the husband, not in general but to the particular will; and in such case the assent avails nothing unless he survive it being but his waiver of his right of being her administrator. For the separate property of the wife a power of disposition by will exists independently of the assent of the husband. Where, by agreement before marriage or subsequently, upon a valid consideration, a power of appointment by will is given to the wife, she may, with the assent of the husband, make a will; but even in such case as that it is ruled by Lord Hardwick, in the case of *Henley* v. *Phillips,* 'that, though a *feme covert* has a power of disposing of a sum of money, or any other thing, by a writing purporting to be a will, yet after the wife's death the proving it in the spiritual court will not give it the authority of a will, but it will still be considered as an instrument only, or an appointment of such sum, or other thing in pursuance of the power, and before it is proved in the Commons as a testamentary conveyance, the husband ought to be examined there as to his consent, nor till then will it have the effect and operation of a will.' 2 Atkins, 48.'' *Perry* v. *Gill,* 2 Humph., 218.

If the foregoing case the court was dealing with personal property, and the observation as to the wife's power of disposition by will of her separate estate has been understood generally to refer to her personalty. Judge Cooper so understood it, and so limits the head-notes of the case in Cooper's Edition of the Tennessee Reports.

In *Johnson* v. *Sharp,* 4 Cold., 45, the court dealt with a devise of real estate, but held it invalid because it was not a separate estate of the testatrix.

By chapter 180 of Acts 1851-52, section 4, carried into the Code at section 2168, and partially carried into Shannon's Code, at section 3901, it was provided:

"Sec. 4.    That a married woman may, by will, dispose of any estate secured to her separate use, by deed, or decree or devise or bequest, or in the execution of a special power to that effect, provided the will is in writing, subscribed thereto by herself, or some other person in her presence and by her direction, and the subscription shall be made, or the will acknowledged by her in the presence of at least two witnesses who shall subscribe the will with their names in the presence of the testatrix."

Whether a devise under this statute would carry the husband's curtesy or be subject to his curtesy we think is debatable.    In the Cyclopedia of Law it is noted that:

"In some jurisdictions the statutes affecting the property of married women have been construed to the effect that the wife cannot devise her realty so as to bar curtesy, while in some others, the assent of the husband is not required."    12 Cyc., 1016.

We do not find it necessary to determine the proper construction of the Acts of 1851-52, because chapter 99 of the Acts of 1869-70, covering the subject, being a later statute, must control if there is any inconsistency between the two.

Chapter 99 of the Acts of 1869-70 is set out in full in the margin.[1] (Reporter will please print the Acts of 1869-70, copy of which is attached, in the margin of the opinion.)

1 Chapter XCIX, 1869-70.

An act to amend the law in regard to *femes covert* owning fee in real estate, and for other purposes.

Section 1. Be it enacted by the general assembly of the State of Tennessee, that married women over the age of twenty-one years, owning the fee, or other legal or equitable interest or estate in real estate, shall have the same powers of disposition by will, deed, or otherwise, as are possessed by *femes sole*, or unmarried women.

Section 2. Be it further enacted, that the powers of said married women to sell, convey, devise, charge or mortgage their real estate, shall not depend upon the concurrence of the husband, or his consent thereto; provided, her privy examination to any deed, mortgage, or other conveyance, shall take place before a chancellor, or circuit judge of this State, or clerk of the county court.

Section 3. Be it further enacted, that *femes covert*, or married women, owning a separate estate, settled upon them, and for their separate use, shall have and possess the same power of disposition by deed, will or otherwise, as are given by the first and second sections of this act: Provided, the power of disposition is not expressly withheld in the deed or will under which they hold the property.

Section 4. Be it further enacted, that all real property, legal or equitable, of every kind and description owned by a married woman, or held in trust for her sole and separate use, shall be liable for all debts contracted by her for necessaries for herself or minor children, as fully as if such married woman were a *feme sole*, and with the same exception as that of a *feme sole*.

Section 5. Be it further enacted, that said married woman shall cause the deed, will or other instruments under which she derives title to her property, claimed under the provisions of this act, to be duly registered in the county of the residence of herself and husband; and on removal to any other county in this State, a copy of the same shall be registered in the county to which said removal takes place; and if the right to the property is not described by deed, will or other instrument, but by succession or inheritance, she shall cause a schedule thereof, verified by her own signature, and acknowledged before the clerk of the county court, or proven, and her privy examination taken, to be registered as aforesaid. If the property shall be land or other real estate, then the registration shall take place in the county where the same is located.

Section 6. Be it further enacted, that the provisions of this act, except the provisions of the third section of this act, shall apply to and embrace only such *femes covert* or married women, as have abandoned their husbands, or who may refuse to live or cohabit with their husbands, or whose husbands may be *non compos mentis*, insane, or of unsound mind; and also to such married women or *femes covert*, whose husbands may fail or refuse to cohabit with,

or have abandoned such married women or *femes covert*: Provided, that all married women or *femes covert*, owning any land or real estate of any kind or description, legal or equitable, in this State, by descent, inheritance, deed, gift, or otherwise, shall have full power and authority to dispose of such land or real estate by last will and testament, in as full, ample and complete a manner as if they were *femes sole*, or unmarried women; but such testamentary disposition of said land, or real estate, shall not be so construed as to defeat any husband's tenancy by curtesy in such real estate or land; and that this act take effect from and after its passage.

W. O'N. Perkins,<br>
Speaker of the House of Representatives.<br>
D. B. Thomas,<br>
Speaker of the Senate.

Passed March 2, 1870.

This act is entitled:

"An act to amend the law in regard to *femes covert* owning a fee in real estate, and for other purposes."

The substance of the act is as follows:

Section 1 provides that adult married women shall have the same power of disposition of their realty by deed or will as *femes sole*.

Section 2 provides that such power of disposition shall not depend upon the husband's consent, if a privy examination is taken as prescribed.

Section 3 provides that married women owning a separate estate shall have the above power of disposition as to that estate unless such power is expressly withheld in the instrument creating it.

Section 4 provides that a married woman's realty shall be liable for debts contracted for necessaries for herself or minor children.

Section 5 requires the registration of their title papers by married women.

Section 6 is in these words:

"Be it further enacted, that the provisions of this act, except the provisions of the third section of this act, shall apply to and embrace only such *femes covert* or married women, as have abandoned their husbands, or who may refuse to live or cohabit with their husbands, or whose husbands may be *non compos mentis,* insane, or of unsound mind; and also to such married women or *femes covert,* whose husbands may fail or refuse to cohabit with, or have abandoned such married women or *femes covert*: Provided, that all married women or *femes covert,* owning any land or real estate of any kind or description, legal or equitable, in this State, by descent, inheritance, deed, gift, or otherwise, shall have full power and authority to dispose of such land or real estate by last will and testament, in as full, ample and complete a manner as if they were *femes sole,* or unmarried women; but such testamentary disposition of said land, or real estate, shall not be so construed as to defeat any husband's tenancy by curtesy in such real estate or land; and that this act take effect from and after its passage."

It will be observed that by the last clause of section 6 it is provided that:

"Such testamentary disposition of said land or real estate shall not be so construed as to defeat any husband's tenancy by the curtesy in such real estate or land."

A very able argument is made to sustain the proposition that section 3, as to married women owning separate estates, is excepted by the letter and spirit of

section 6 from the operation of section 6, and it is there-fore contended that the final prohibition in section 6 against any testamentary disposition which excludes the husband's curtesy has no reference to the powers of disposition conferred in section 3 upon married women owning separate estates, and does not limit such powers.

We cannot take this view. Section 6 does except section 3, but it is excepted with a proviso. The proviso qualifies the whole of section 6. The exception is re-strained by the proviso, just as are the enacting words.

Paraphrased with sufficient accuracy for the purposes of the argument, section 6 may be read:

Be it further enacted, that the provisions of the act, except as to married women owning separate estates, shall only apply to married women living apart from their husbands, and married women having husbands *non compos mentis*: Provided "all married women or *femes covert* owning any land or real estate, of any kind or description, legal or equitable," may dispose of same by will as if unmarried, but such testamentary disposition shall not defeat "any husband's" curtesy.

The legislative thought thus seems plain. While no married women, except those owning separate estates, and those having imbecile husbands, or those living apart from their husbands, can sell, convey, and mortgage their real estate according to the terms of sections 1 and 2, all married women owning lands or estates real of any kind or description, legal or equitable (this includes separate estates and every other kind),

can dispose of them by will, but no such disposition of said interests (whether separate estates or not) shall defeat any husband's curtesy.

The power to devise is conferred on all married women as to all estates real. All are likewise restricted so they may not by will deprive any husband of his estate by the curtesy.

Moreover, this is right and just. It is beyond the husband's power by will to deprive his wife of dower. No more should she be allowed by will to defeat his curtesy.

*Molloy* v. *Clapp*, 2 Lea, 586; *Lightfoot* v. *Bass*, 8 Lea, 350; *Vick* v. *Gower*, 92 Tenn., 394, 21 S. W., 677, and other cases called to our attention by counsel, dealt with the wife's power under the act of 1869-70 to sell, mortgage, or convey her separate estate in realty.

*Hughey* v. *Warner*, 124 Tenn., 725, 140 S. W., 1058, 37 L. R. A. (N. S.), 582, and *Williford* v. *Phelan*, 120 Tenn., 589, 113 S. W., 365, discussed wills of personalty.

Nothing we have said conflicts with these cases. Singularly enough, the question here presented seems not to have arisen in this court.

We conclude that Mrs. Lightburne was without power to devise her real estate so as to defeat her husband's curtesy. There was no intention whatever to exclude his curtesy, indicated in the settlement of this separate estate upon her. We are not dealing with such a case. So far as the record before us discloses, the devises to the children are good, and will be upheld, but they are subject to the life estate of Mr. Lightburne.

Larkin v. Lightburne.

The decree of the court of civil appeals and of the chancellor will be reversed, and the cause remanded to the chancery court of Shelby county for further proceedings.   Tax costs to the estate.