LEOPOLD SCHAFFLER *v.* JOHN V. HANDWERKER *et al.*[*]

*(Nashville.* December Term, 1925.)

1. **CURTESY.** Under emancipation statute wife could not by will destroy husband's curtesy estate in her lands.

 Laws 1919, chapter 126, removing disability of married woman during period of coverture, *held* not to reach beyond such period or to give wife power to destroy by will husband's right of curtesy in her land on her decease. (*Post, p.* 336.)

 Acts cited and construed: Acts 1923, chs. 29, 44; Acts 1919, chs. 126, 141; Acts 1913, ch. 26.

 Cases cited and approved: Travis v. Sitz, 135 Tenn., 156; Larkin v. Lightburne, 132 Tenn., 277; Day v. Burgess, 139 Tenn., 527; Hull v. Hull, 139 Tenn., 572; Gill v. McKinney, 140 Tenn., 549; Tellico Bank v. Loomis, 147 Tenn., 162; Pattison v. Baker, 148 Tenn., 400; Priest v. Bank & Trust Co., 148 Tenn., 87; Smith v. Haire, 133 Tenn., 343.

2. **STATUTES.** Under act misleading as to title husband not entitled to any part of wife's personal esate disposed of by will.

 Where wife's will disposed of her real and personal property to exclusion of husband, husband had no right to any share in the personal property under Acts 1923, chapter 44, purporting to give husband right to dissent from wife's will, which violated Constitution article 2, section 17, because of misleading title. (*Post, pp.* 336-338.)

3. **STATUTES.** Statute, purporting to give husband right to dissent from wife's will and take as sole survivor, unconstitutional because of misleading title.

 Act 1923, chapter 44, enacted to amend Shannon's Code, section 2404, subsecs. 1 and 2 (Thompson's-Shannon's Code, section 4146), to husband right to dissent from wife's will and take as sole survivor, *held* unconstitutional because title to act proposes to give dissenting husband whole of personal property, while the body of the act

(section 1, subsec. 3) gives him only part thereof; title therefore failing to indicate scope of act, and, being misleading, violating Constitution, article 2, section 17. (*Post*, *pp.* 336-338.)

Acts cited and construed: Acts 1923, ch. 44; Acts 1859-60, ch. 3.

Case cited and approved: Gupton v. Gupton, 40 Tenn., 488;

Code cited and construed: sec. 2404, subsecs. 1, 2 (Tenn.); sec. 4146 (T.-S.).

Constitution cited and construed: Art. 2, sec. 17.

---

*Headnotes 1. Curtesy, 17 C. J., Section 48; 2. Statutes, 36 Cyc., p. 1020; 3. Statutes, 36 Cyc., p. 1046.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— Hon. D. W. De Haven, Judge.

Barton & Barton, for appellant.

Randolph & Randolph, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

Mrs. Annie Handwerker died testate in Shelby county September 6, 1925. She left a husband, John V. Handwerker, and several children. She had been twice married, and had children by both husbands. In her will she disposed of a considerable estate, real and personal, dividing it among all her children. She bequeathed to her husband the sum of $15. The complainant, Leopold Schaffler, a son by her first husband, was named as ex-

ecutor by the will, and the will was duly probated, and Schaffler qualified as such executor.

Thereafter the husband, John V. Handwerker, undertook to dissent from his wife's will under the provisions of chapter 44 (House Bill 316) of the Acts of 1923. He claims to be entitled under this act to a child's part of the personal property, and also claims under this act as well as chapter 126 of the Acts of 1919, to be entitled to an estate by the curtesy in the land belonging to his deceased wife.

. This suit was brought by the executor under the Declaratory Judgments Statute (chapter 29 of the Acts of 1923), the husband and all the children being brought into court, to obtain a declaration as to the rights of the parties. Proper answer was made to the bill by all the defendants, and the case submitted on an agreed statement of facts.

The chancellor was of opinion that the husband was entitled to a child's part of the personal property of his late wife, and was also entitled to an estate by the curtesy in her land, and he so declared. From this decree the executor has appealed to this court.

Prior to chapter 26 of the Acts of 1913 the rights of the husband as tenant by the curtesy initiate had been reduced by statute to the privilege of renting out the wife's land as governor of the family and of collecting the rents for the benefit of the family. *Travis* v. *Sitz,* 135 Tenn., 156, 185 S. W., 1075, L. R. A., 1917A, 671. The wife had not been empowered, however, to dispose of her land by will so as to defeat the husband's curtesy consummate (*Larkin* v. *Lightburne,* 132 Tenn., 277, 177 S. W., 1154) ; that is, unless she held under a settlement to

her separate use, excluding the husband's curtesy, which case the court said was not before it in *Larkin* v. *Lightburne,* supra.

Chapter 26 of the Acts of 1913 provided as follows: "Married women . . . are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal in possession, and to make any contract in reference to it and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married."

In *Day* v. *Burgess,* 139 Tenn., 527, 202 S. W., 911, L. R. A., 1918E, 692, it was held that this statute, with its comprehensive grant of powers, entitled a married woman to dispose of her land by will so as to defeat altogether her husband's right of curtesy.

But in the next case (*Hull* v. *Hull,* 139 Tenn., 572, 202 S. W., 914), it was held chapter 26 of the Acts of 1913 did not of itself abolish the estate of tenancy by the courtesy consummate, and, if the wife died without disposing of her real estate owned at the time of her death by will, the husband's curtesy attached.

In *Gill* v. *McKinney,* 140 Tenn., 549, 205 S. W., 416, this court held that the effect of chapter 26 of the Acts of 1913 was furthermore to destroy tenancies by the entirety.

*Day* v. *Burgess,* supra, *Hull* v. *Hull,* supra, and *Gill* v. *McKinney,* supra, were decided by this court at the April term, 1918. The conclusions reached in these cases, while apparently unavoidably resulting from chapter 26 of the Acts of 1913, rather startled the profession, and there was considerable dissatisfaction with the State of the law that accrued.

At the next session of the legislature, by chapter 141 of the Acts of 1919, chapter 26 of the Acts of 1913 was repealed. Immediately thereafter, by chapter 126 of the Acts of 1919, the legislature re-enacted that portion of chapter 26 of the Acts of 1913 above quoted, but by section 2 of chapter 126 of the Acts of 1919 it was pro- vided: "That nothing in this act shall be construed as abolishing tenancies by the entirety, and as affecting the husband's right of curtesy."

From the foregoing it seems obvious 'that the repeal of chapter 26 of the Acts of 1913 and the enactment of chapter 126 of the Acts of 1919 was intended by the legislature to meet and obviate the effect of the decisions of this court in *Day* v. *Burgess,* supra, and *Gill* v. *McKinney,* supra.

The repeal of chapter 26 of the Acts of 1913 restored the law to the condition existing when said act was passed, at which time the wife could not by will so dispose of her land as to defeat the husband's estate by the curtesy. We are of opinion that this earlier condition of the law was intended to be preserved and was pre-

served, notwithstanding the passage of chapter 126 of the Acts of 1919, by section 2 of the latter act, which forbade any construction thereof ''as affecting the husband's right of curtesy.''

It is earnestly argued that section 2 of chapter 126 of the Acts of 1919 was merely a legislative declaration that the act itself should not be construed to affect the husband's curtesy, and not a denial of the wife's power by will—by her act—to destroy this estate.

This argument, however, gives no force at all to the prohibition in section 2 of chapter 126 of the Acts of 1919 against a construction affecting the husband's right of curtesy. As we have heretofore seen, chapter 26 of the Acts of 1913 did not affect the husband's right of curtesy consummate, if the wife by will failed to dispose of the land of which she was seized at her death. We should have to reject, as superfluous and entirely without meaning, the effort of the lawmakers to preserve the right of curtesy, evidenced by section 2 of chapter 126 of the Acts of 1919, if we yielded to this argument made on behalf of the executor.

Properly understood, there is nothing in our later cases (*Tellico Bank* v. *Loomis,* 147 Tenn., 162, 246 S. W., 21; *Pattison* v. *Baker,* 148 Tenn., 400, 255 S. W., 710, 29 A. L. R., 1334; and *Priest* v. *Bank & Trust Co.,* 148 Tenn., 87, 251 S. W., 904), that conflicts with the conclusion above indicated as to the effect of section 2 of chapter 126 of the Acts of 1919.

All these cases say that it was the intention of the act of 1919, as well as the act of 1913 to deprive the husband of his former rights with respect to his wife's property

during coverture. None of them deal with the rights of the husband after the wife's death.

In *Pattison* v. *Baker,* supra, it was held that section 2 of chapter 126 of the Acts of 1919 did not restore the rights of the husband as tenant by the curtesy initiate so as to entitled him to any use of rents from the wife's land; that this section 2 of the act of 1919 dealt with tenancy by the curtesy proper or consummate.

It is concerning the husband's tenancy by curtesy consummate that a declaration is sought in this case. Under the broad powers conferred upon the wife respecting her property by the act of 1919 she has full control over it, and may dispose of it as she wishes during coverture. So the cases mentioned hold.

Neither the act of 1913 nor the act of 1919 affected the statutes of descent and distribution. They did not and were not intended to affect the marital rights of the husband save during coverture. Upon the wife's death intestate the rights of the husband as to her property were the same after these statutes as before. Originally, as shown in *Larkin* v. *Lightburne,* supra, the wife was not entitled to make a will. Gradually her testamentary powers were extended, but she did not, prior to the Act of 1913, ordinarily have the right to make a will so as to defeat the husband's curtesy consummate. Chapter 26 of the Acts of 1913 gave her this power, but that act was repealed. Section 2 of chapter 126 of the Acts of 1919 in our opinion designedly left her in this respect in the same plight as she was before the act of 1913 was passed.

"Drawing a will can have no effect on the title to property. No *status* is changed thereby. The effect of

a will is postponed until after the death of a testator, when the marriage relation between the testator and his wife is at an end. . . . The incorporation in a will or a provision disposing of his wife's unreduced choses in action is the mere expression of an intention on the part of the husband to transfer them or assign them after his death—after coverture has ended, when his power over them has gone." *Smith* v. *Haire,* 133 Tenn., 343, 181 S. W., 161, Ann. Cas., 1916D, 529.

So, as reasoned by the chancellor, the will of the wife in the case before us did not speak until after her death. She had not availed herself of the power conferred on her during coverture to dispose of her real estate. The emancipation statute of 1919 did not reach beyond coverture, and she died the owner of her land. The tenancy by curtesy was then consummate. To destroy it by will is a power not yet given to the wife.

It results that we agree with the chancellor in his conclusion that the husband here is entitled to his estate by the curtesy in the lands of his deceased wife.

We do not agree with the chancellor, however, that the husband was entitled to any part of her personal estate. It is conceded that the wife is entitled to dispose of her personal property by will, and the husband's claim to a share therein is based altogether upon chapter 44 of the Acts of 1923.

The caption and the first section of this act are as follows:

"An act to amend section 2404 and subsections 1 and 2 thereof, of the Code of Tennessee, to give the husband the right to dissent from his wife's will that she now has to dissent from his will, and take as sole survivor.

"Section 1.  Be it enacted by the General Assembly of the State of Tennessee, that section 2404 of the Code of Tennessee, and subsection 1 and subsection 2 thereof, be and the same are hereby amended by adding to said section an additional subsection as follows:

" 'Subsection 3.  That the husband may likewise dissent from the will of his wife within one year after the probate thereof, and in which case if the wife died leaving no child or not more than two, the husband shall be entitled to one-third part of her personal estate, in addition to his curtesy in the real estate as provided by law. But if the wife has more than two children, the husband shall share equally with all the children in said personal estate, he being entitled to a child's part.' "

It is said that this act was passed in violation of section 17 of article 2 of the Constitution, and the court feels obliged to adopt this view.

The title foreshadows an act amending section 2404 and subsections 1 and 2 thereof of the Code of Tennessee, giving the husband the right to dissent from his wife's will that she now has to dissent from his will, and take as sole survivor.

Going to the new subsection 3 to be added to the Code, it is provided, if the wife leave no child, or not more than two, the husband shall take one-third part of her personal property, in addition to his curtesy; but, if the wife leave more than two children, the husband shall share equally with all the children in the personal estate.

The purpose of the act, according to the caption, is to permit the husband to dissent and take as sole survivor. According to the body of the act, he may take one-third of the personalty, if there are no children or not more

than two children, or he may take a child's part if there are more than two children.

If the dissenting wife were sole survivor, and there were no children, under Code, section 2404 (Thompson's-Shannon's Code, section 4146), she would take the entire personal estate (*Gupton* v. *Gupton,* 3 Head, 488). It required chapter 3 of the Acts of 1859-60 (Thompson's-Shannon's Code, section 4147) to limit the dissenting wife taking as sole survivor, to one-third of the personalty. So, if the husband takes as sole survivor under section 2404 of the Code, he takes all the personalty. The caption of the act of 1923, therefore, proposes to give the dissenting husband the whole of the personal property, while the body of the act gives him only a part thereof.

The title of this statute not only fails to indicate its scope, but, on the contrary, the title is altogether misleading. Such attempted legislation is palpably vicious and condemned by the section of the Constitution mentioned.

Other constitutional objections are made to chapter 44 of the Acts of 1923 which we do not find it necessary to consider.

The declaration of the chancellor will accordingly be modified as above indicated. The costs of this cause will be taxed to the estate.